UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CT-3188-BO

| | |
|---|---|
| DUSTIN KARL NEWCOME,<br>    Plaintiff, | )<br>)<br>) |
| v. | )    O R D E R<br>) |
| CORRECTIONAL OFFICER STOKES, et al.,<br>    Defendants. | )<br>) |

On October 19, 2010, plaintiff, a state inmate, filed this civil rights action pursuant to 42 U.S.C. § 1983. On January 18, 2012, Correctional Officer Cynthia Moore filed a motion for summary judgment [D.E. 27].[1] Newcome was given proper notice of his rights regarding the pending motion; however, Newcome did not respond. The matter is ripe for determination.

i.    Issues

The issue before the court is that Correctional Officers Cynthia Moore and Michael Stokes used excessive force against Newcome in violation of the Eighth Amendment.[2]

ii.    Discussion

    a.    Summary Judgment

---

[1] As stated above, Newcome filed this action on October 19, 2010. On March 18, 2011, the United States Marshal Service attempted service on two individuals, Correctional Officers Stokes and Moore, originally named as defendants [D.E.7]. Correctional Officer Stokes summons was returned unexecuted [D.E. 10]. The court then entered an order seeking for the North Carolina Attorney General to provide the needed information to make service [D.E. 15]. The information was provided under seal as allowed by court order [D.E. 16]. The summons was re-issued [D.E. 17] as to Correctional Officer Stokes and returned unexecuted for a second time [D.E.20]. Newcome was given notice [D.E. 21], and on November 17, 2011, by court order, Correctional Officer Stokes was dismissed from the action for failure to effectuate service [D.E. 24].

[2] As set out in footnote 1, Correctional Officer Stokes has been dismissed from suit for failure to effectuate service.

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation omitted & emphasis removed). A trial court reviewing a summary judgment motion should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. The court construes the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in the non-movant's favor. See Matsushita, 475 U.S. at 587. The court can rely on the medical affidavits and prison medical records, including mental health records, in ruling on a motion for summary judgment. See generally, Stanley v. Hejirika, 134 F.3d 629, 637-38 (4th Cir. 1998); Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995); Marshall v. Odom, 156 F. Supp. 2d 525, 530 (D. Md. 2001); Bennett v. Reed, 534 F. Supp. 83, 86 (E.D.N.C. 1981), aff'd, 676 F.2d 690 (4th Cir. 1982).

  b. Factual Outline

Plaintiff alleges that on October 28, 2009, defendant Correctional Officer Cynthia Moore and Correctional Officer Stokes escorted plaintiff back to his cell in handcuffs. Plaintiff alleges that while being escorted to his cell, he and Correctional Officer Stokes began arguing about his electric razor. Plaintiff alleges he stopped walking to hear Correctional Officer Stokes'

Case 5:10-ct-03188-BO Document 29 Filed 06/13/12 Page 2 of 7

explanation of why his electric razor was taken. At that point, Correctional Officer Stokes became aggressive, lifting plaintiff's cuffed wrists up and shoving plaintiff forward. Plaintiff further alleges that Correctional Officer Stokes became more aggressive and slammed plaintiff's face forward into the security rails. When plaintiff turned his head away from the rails, Correctional Officer Stokes allegedly punched plaintiff in the mouth, splitting his lip. Correctional Officer Stokes then allegedly threw plaintiff on the floor causing plaintiff to fall on his back and causing the handcuffs to clap down on plaintiff's wrist leaving a scar. Correctional Officer Stokes then allegedly choked plaintiff until plaintiff became unconscious.

Plaintiff alleges that defendant Moore stood by and watched as Correctional Officer Stokes assaulted him. As a result of Correctional Officer Stokes's actions and defendant Moore's failure to intervene, plaintiff alleges that his wrist is damaged and he has to attend counseling for paranoia and emotional problems.

Defendant Moore relies on the pleadings, attachments, and the affidavits of defendant Cynthia Moore and Doretha Williams. Plaintiff did not respond to the motion for summary judgment.

Defendant Moore asserts that on October 28, 2009, at approximately 7:00 pm, defendant Moore and Correctional Officer Stokes were conducting showers and cell searches in the segregation Unit One D-dorm. The search of plaintiff's cell, E4D4, resulted in the discovery of an electric razor and a small fingernail clipper. (Moore Aff ¶4) Pasquotank Correctional Institution's Standard Operating Procedures, Chapter III, Human Services Section, V., (9) provides that only inmates who are in the regular population can purchase a battery operated shaver after submitting the required request form at the canteen. (Id., Ex. A) At that time,

3

plaintiff was housed in the segregation unit, and he was not allowed to have the electric razor. Consequently, defendant Moore and Correctional Officer Stokes retrieved the razor and reported it as contraband. (Id.)

While defendant Moore and Correctional Officer Stokes were conducting the cell search, plaintiff was yelling expletives from the shower. Plaintiff continued to use profanity as defendant and Correctional Officer Stokes cuffed plaintiff while he was in the shower. (Moore Aff. ¶5) Correctional Officer Stokes escorted plaintiff back to his cell, while defendant Moore assisted by following the two.

After the escort began, plaintiff began to "buck" Correctional Officer Stokes. Correctional Officer Stokes placed his hands on plaintiff's wrist and shoulder area to get a more secure and balanced position to assist and escort plaintiff to his cell. (Id.) After a few more steps, plaintiff was still using profanity and started resisting while being escorted to his cell by using his body strength towards Correctional Officer Stokes. In an attempt to restrain plaintiff, Correctional Officer Stokes took plaintiff's arms and locked them around plaintiff's upper body torso. Plaintiff continued to resist Correctional Officer Stokes' attempts to keep plaintiff moving. (Id. ¶7) When Correctional Officer Stokes and defendant Moore where almost to plaintiff's cell, plaintiff pushed his entire body strength towards the Officers. Defendant Moore radioed for assistance. (Id. ¶8) Shortly thereafter, staff arrived and Correctional Officer Stokes managed to secure what appeared to be the upper portion of plaintiff's shoulder and neck area. Defendant Moore secured plaintiff's legs and plaintiff was placed on the floor to gain control of the situation. Plaintiff was then placed in his cell. (Id. ¶9). DOC Policy and Procedures, Chapter F, Section 1500, Use of Force, provides that "hands-on physical force, including approved

4

unarmed self-defense techniques, may be used: (1) To restrain or move a non-aggressive, non compliant inmate; or (2) To subdue an aggressive inmate when pepper spray is not effective or is not feasible; or (3) To prevent an escape, to protect property, to defend the officer or a third party from imminent assault,to ensure compliance with a lawful order or to return an escapee to custody." (Moore Aff., Ex. B)

At approximately 8:05 p.m., plaintiff was seen by Doretha Williams, LPN., because he was involved in a disturbance. (Williams Aff. ¶4) Nurse Williams noted that plaintiff was oriented. His wrists had small superficial lacerations without bleeding and he had minimal swelling with some redness on the wrists. She noted that plaintiff moved his wrists freely without complaint and that he was very talkative and moving about actively in his holding cell. (Id. ¶5) Plaintiff's lower lip had a superficial laceration which was not bleeding and there was no swelling of the lip. An area, approximately 1" in length, above the knee of plaintiff's left thigh was red and with minimum swelling. Plaintiff was walking steadily and was cooperative. He was treated with ice packs and Ibuprofen. (Id. ¶6)

c. Excessive Force

It is clearly established that the Eighth Amendment forbids the "unnecessary and wanton infliction of pain" against inmates. Whitley v. Albers, 475 U.S. 312, 319 (1986) (internal quotation marks omitted). Not every infliction of pain is forbidden, however, and prison officials may apply force to an inmate "in a good faith effort to maintain or restore [prison] discipline." Id. at 320 (internal quotation marks omitted). However, where prison officials use force "maliciously and sadistically for the very purpose of causing harm," an Eighth Amendment violation has occurred. Id. at 320-21 (internal quotation marks omitted). Furthermore, the

5

Supreme Court has held "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." Wilkins v. Gaddy, ___ U.S. ___, ___, 130 S. Ct. 1175, 1176 (2010). The court must look at "the nature of the force rather than the extent of the injury." Id. "This is not to say the 'absence of serious injury' is irrelevant to the Eighth Amendment inquiry." Id. at 1178 (citation omitted). It is one factor in applying and reviewing the Eighth Amendment analysis. Id.

In determining whether prison officials have acted maliciously and sadistically, a court should balance: (I) "'the need for the application of force,'" (ii) "'the relationship between the need and the amount of force that was used,'" (iii) the threat reasonably perceived by the responsible officials, and (iv) "any efforts made to temper the severity of a forceful response." Whitley, 475 U.S. at 321 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)). Not every malevolent touch by a prison guard, later determined in the calm of a judge's chambers to be gratuitous, gives rise to a federal cause of action. Hudson, 503 U.S. at 9 (citing Johnson, 481 F.2d at 1033). Prison officials are charged with balancing competing governmental interests, such as: the maintenance of order; protection of correctional officers, prison staff and other inmates; and inmates' rights to be free from cruel and unusual punishment. Whitley, 475 U.S. at 321. When correctional officers use force to keep order, they have little time for considered reflection and must quickly and decisively balance the need to maintain order and restore discipline through force against the risk of injury to inmates. Hudson, 503 U.S. at 6. Thus, in excessive force cases, the subjective component is measured by the same yardstick as the objective component, "whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7.

Plaintiff cannot show that defendant Moore's use of force was excessive. Plaintiff readily admits in his petition that he was in segregation and was arguing with Officer Stokes about the confiscation of his razor. Plaintiff does not respond to defendant Moore's motion and summary judgment materials. Those materials show that plaintiff was aggressive and angered by the cell search and confiscation of the electric razor. The policy of the prison is clearly that an individual in segregation may not possess an electric razor, only those in general population. The materials show that plaintiff was resistant and physical with the officers, and the amount of force used by defendant was limited to the amount necessary to restrain plaintiff and to restore order; it was not maliciously and sadistically used to cause harm. The medical records support this holding. Because the use of force was appropriate and used solely for the purpose of restoring order, defendant's summary judgment motion is GRANTED.

iii. Conclusion

Accordingly, defendant Moore's motion for summary judgment [D.E. 26] is ALLOWED. The Clerk is DIRECTED to CLOSE the case.

SO ORDERED, this the /2 day of June 2012.

TERRENCE W. BOYLE
United States District Judge

7